## CIVIL INVESTIGATIVE DEMAND

# United States Department of Justice
### Washington, D.C. 20530

TO:   The Kroger Company                                Civil Investigative
          c/o Jeffrey Miller, Esq.,                      Demand No.  22-522
          Vorys, Sater, Seymour, and Pease LLP
          301 East Fourth Street
          Suite 3500
          Cincinnati, OH 45202

       This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that The Kroger Company knowingly submitted, or caused to be submitted, false claims to Medicare and other government programs for controlled substances, including opioids, that were not reasonable or necessary or which were otherwise not eligible for coverage.

       This Demand requires you to provide documents and answers to the attached written interrogatories to the Federal Government. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

**<u>Document Requests</u>:**

       In accordance with the Definitions and Instructions set forth in **Attachment A**, You are required by this Demand to produce any and all documents in your possession, custody, or control responsive to the document requests set forth in **Attachment B** to this Demand.

       You must make this material available to Trial Attorney Danielle Sgro and Assistant United States Attorneys Matthew Horwitz and Michael Downey, who have been designated as the False Claims Act custodians in this case. Ms. Sgro may be contacted at (202) 305-3911, Mr. Horwitz at (513) 684- 6823, and Mr. Downey at (614) 255-1573, if you have any questions. These documents shall be produced no later than thirty (30) days from the receipt of this Demand, to the attention of Ms. Sgro at U.S. Department of Justice, Civil Division, 175 N Street NE, Room 10.1306, Washington, DC 20002, or at another time or location to be mutually agreed upon by yourself and the False Claims Act custodians. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

**<u>Written Interrogatories</u>:**

   In accordance with the Definitions and Instructions set forth in **Attachment A**, You are required by this Demand to answer the attached interrogatories in **Attachment C**.  The answers to interrogatories shall be submitted no later than twenty (20) days from the receipt of this Demand, to the attention of Ms. Sgro at U.S. Department of Justice, Civil Division, 175 N Street NE, Room 10.1306, Washington, DC 20002, or at another time or location to be mutually agreed upon by yourself and the False Claims Act custodians.   The interrogatories shall be answered separately and fully in writing under oath and shall also be submitted under a sworn certificate in the form printed in this Demand.  If you object to any interrogatory, the reasons for the objection shall be stated with specificity.

   Issued at Washington, DC, this <u> 27th </u> day of <u>  June   </u>, 2022.



JAMIE ANN YAVELBERG

Digitally signed by JAMIE ANN YAVELBERG
Date: 2022.06.27 14:39:11 -04'00'

Jamie Ann Yavelberg
Director
Commercial Litigation Branch

**FORM OF CERTIFICATE OF COMPLIANCE**[1]

I have responsibility for producing the documents requested in Civil Investigative Demand No. 22-522. I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature _____

Title _____

**SWORN TO** before me this _____ day of _____, 20__

_____
NOTARY PUBLIC

_____

[1] In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

## FORM OF CERTIFICATE OF COMPLIANCE[1]

I have responsibility for answering the Interrogatories requested in Civil Investigative Demand No. 22-522.  I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature _____

Title       _____

**SWORN TO** before me this _____ day of

_____, 20__

_____
NOTARY PUBLIC

---

[1]  In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

-5-

## **<u>VERIFIED RETURN OF SERVICE</u>**

I,_____, an employee of the United States working under the direction and supervision of attorney _____ in connection with a false claims law investigation, hereby certify that at the time of _____, on the_____day of _____, 2022, I personally served Civil Investigative Demand No. 22-522 on The Kroger Company, by delivering an executed copy of such Demand at:

_____

_____

_____


I declare under penalty of perjury that the foregoing is true and correct.  Executed on this _____day of _____, 2022.

Signature_____

Title_____

5

## ATTACHMENT A

**A.    DEFINITIONS**

1.    Unless specified otherwise, the terms "The Kroger Company," "Kroger" "You," or "Your" mean:

>   a.  the Person on which this Subpoena was served;

>   b.  Any entity You are or were affiliated with, and all names and any variations thereof, and any and all predecessors, successors, parent organizations, subsidiaries, affiliates, partners, independent contractors, consultants, branches, divisions, units, or offices of such entity;

>   c.  Each of Your agents or other persons acting or purporting to act in Your name or on its behalf.

2.    "Communication" is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a) and 45(a) and means any transmission or exchange of information orally or in writing.

3.    "Document" and "Documents" are used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a) and 45(a) and include, but are not limited to, any communications and any hard copy or electronically stored information and emails.

4.    "Employee" shall mean any person including, but not limited to, an employee, volunteer, independent contractor or agent, all past and present directors, officers, agents, representatives, accountants, advisors, and consultants who acted or purported to act on Your behalf or who performed any service for You under Your name, whether on a full-time, part-time, piece-work, commission or other basis and whether paid or unpaid.

5.    "Controlled Substances" refers to a drug or other substance, as defined in 21 U.S.C. §§ 802(6) and 812, and 21 C.F.R. §§ 13.08.11–1308.15.

6.    "Opioid(s)" means all products containing opioids or opiates, including but not limited to all products containing buprenorphine, butorphanol, codeine sulfate, fentanyl, hydrocodone bitartrate, hydromorphone, levorphanol tartrate, meperidine, hydrochloride, methadone, hydrochloride, morphine sulfate, oxycodone, oxymorphone, tapentadol, or tramadol.

7.    "Federal Health Care Program" means any plan or program that provides health care benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the government of the United States of America, including, but not limited to, Medicare, Medicaid, TRICARE, the Federal Employee Health Benefits Program, and the Department of Labor's Office of Worker's Compensation Program.

8. "Health Care Provider" means any individual or entity that provided, or assisted in providing, health services.

9. "Red Flag" refers to a circumstance surrounding the prescription of a Controlled Substance prescription that does or should raise a reasonable suspicion about the legality or validity of the prescription.

10. "Text Message Conversation" refers to any and all electronic communications (other than emails) that can or do contain text, regardless of the format of the communications, the application or platform used to send or receive the communications, and whether the communications are immediately retrievable only via a forensic extraction. Text Message Conversations include (but not are limited to) those occurring in or via SMS, MMS, EMS, iMessage, Facebook chat, Facebook messenger, Google Talk (former Gchat), Blackberry Messenger (BBM), Skype, GroupMe, AIM, WhatsApp, Slack, Snapchat, Signal, WeChat, or company-deployed electronic health records or communications platforms. Text Message Conversations also include (but are not limited to) recoverable deleted data, backup files (e.g., iCloud or iPhone backup files), and archive snapshots.

11. "System" refers to all databases, software applications, or other tools (electronic or non-electronic) used to track, log, and inventory drug-dispensing records or data.

12. "Prescription Drug Monitoring Program," or "PDMP," refers to an electronic database that tracks controlled substance prescriptions in a state.

13. Relating to" and "related to" mean consisting of, concerning, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

14. The terms "and" and "or" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

15. "Identify," unless otherwise defined, means:
   a. In the case of an individual, to state the name; social security number and/or national/state identification number; date of birth; Contact Information; last known residence; employer or business affiliation; and occupation and business position held; and
   b. In the case of a Person other than an individual, to state the name; if incorporated, the place of incorporation; the principal place of business; and the identity and Contact Information of the individual(s) having knowledge of the matter with respect to which the company is named.

16. "Including" means "including but not limited to."

17. The terms "any" and "all" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

18.     The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this Demand any document which might otherwise be construed as outside its scope.


**B.      INSTRUCTIONS**

1.     Unless otherwise stated in the specific request in **Attachments B** and **C**, each request covers the relevant time period from January 1, 2009 to the present.

2.     This Demand is continuing in nature.  If You become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, or if You become aware of or acquire additional information that is responsive to these Interrogatories, You shall promptly produce such additional documents or supplement Your Interrogatory responses.

3.     This Demand applies to all documents and information in Your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by Your current or former employees, including, but not limited to, in-house IT specialists and technicians, and IT specialists and technicians to whom digital services have been out-sourced.

4.     All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

5.     If any document which is otherwise responsive to this Demand is not disclosed because of a claim of privilege or other objection, You shall identify such documents on a Privilege Log.  The Privilege Log shall be produced in Excel or Word format and include the following information:

(a) the basis for the assertion of the privilege or objection;

(b) the type of document (e.g., letter, memorandum, email, etc.);

(c) the name and title of the author (and if different, the preparer and signatory);

(d) the name(s) and title(s) of the individual(s) to whom the document was addressed;

(e) the name(s) and title(s) of the individuals to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

(f)  the date of the document;

8

(g) number of pages;

(h) a general description of the subject matter; and

(i) the Request(s) to which the document is responsive.

6.      When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

7.      If any document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

(a) identify the document by type, date, and title;

(b) identify the person who last had custody or control over the document;

(c) state the date on which the document was destroyed or was discovered to have been lost;

(d) if the document was destroyed, state why it was destroyed and identify the person(s) who destroyed it;

(e) if the document was lost, describe the circumstances in which its loss was discovered, state the date that it was last seen or otherwise accounted for, and identify the person(s) who discovered its loss and who last saw or otherwise accounted for it;

(f) identify all persons who have knowledge pertaining to the destruction or loss of the document, giving a concise but complete statement of the knowledge You claim each such person has;

(g) identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge You claim each such person has; and

(h) produce all existing indices, lists, or other documents in Your possession, custody, or control that reflect the existence of such lost or destroyed documents, and/or their transfer or destruction.

8.      If no documents exist that are responsive to a specific document request, a written statement to that effect shall be provided at the time of production.

9.      To the extent that documents responsive to this Demand are in the possession, custody, or control of third parties, this Demand requires a statement to that effect at the time of production, specifically providing the name, address, telephone number and principal contact of the third party, and shall further identify those documents in said third party's possession.

10.     Please produce imaged hard copy and electronic documents according to the **Specifications for Production of Electronically Stored Information and Digitized Images** included in **Attachment D**.

11.     For each Interrogatory and subpart thereof, You must respond separately and in writing.  Your responses must identify all documents that You used, referenced, or relied upon in your written responses.

12.     If You withheld any information responsive to any Interrogatory based on a claim of privilege or other objection:  (a) furnish the basis for the assertion of the privilege or objection, (b) identify all individuals who could respond to the Interrogatory with regard to the information that is being withheld, and (c) set forth the general subject matter and the specific Interrogatory or Interrogatories to which each individual could testify.

13.     When providing the name of an individual in response to any Interrogatory or individuals identified pursuant to Instruction 12 above, provide the individual's last known address, telephone number, email address, or other contact information as well as the individual's relationship to You.  If the individual is or was an employee, provide the individual's title and dates of employment.

## ATTACHMENT B

## DOCUMENTS TO BE PRODUCED

1.      Copies of management and organization charts or other documents sufficient to identify Kroger's:  (a) management structure and personnel; and (b) corporate structure, including relationship to parent(s), subsidiary(ies), division(s), joint ventures of Kroger, or other related entities associated with Kroger.

2.      All dispensing data and dispensing reports maintained by Kroger pertaining to dispensing of Controlled Substances by all of the Kroger pharmacy locations listed in Exhibit 1 (the "Exhibit 1 Pharmacies").  All such data and reports must include all fields, columns, rows, data, and information included in the raw or original versions maintained by Kroger and/or the Kroger pharmacy location.

3.      All Documents and Communications, including Text Message Conversations, relating to Health Care Providers listed in Exhibit 2.

4.      All training materials, policies, procedures, corporate guidance, and directives relating to the following:  (a) verifying, filling, or dispensing Opioids and Controlled Substances; (b) patient counseling for new or refill prescriptions of Controlled Substances; and (c) physical security controls for Controlled Substances, including storage and access.

5.      All Documents and Communications relating to Your compliance with the requirements of federal and state law (including Controlled Substances Act and the regulations promulgated thereunder) in connection with Your dispensing of Opioids or other Controlled Substances.

6.      All Documents and Communications relating to audits, investigations, reviews, examinations, administrative and other enforcement actions, or inquiries relating to the dispensing of Opioids or other Controlled Substances by Your pharmacies.

7.      All Documents and Communications, including training materials, policies, procedures, corporate guidance, and directives, relating to how Your pharmacists should identify or resolve Red Flags for Opioids or other Controlled Substances and what Your pharmacists should do when a Red Flag is identified.

8.      All Documents and Communications, including training materials, policies, procedures, corporate guidance, and directives, relating to when, how, and under what circumstances pharmacists employed at Your pharmacies are permitted to or should refuse to fill a prescription for Opioids or other Controlled Substances.

9.      All Documents and Communications relating to instances when pharmacists employed at Your pharmacies refused to fill Opioids or other Controlled Substances

11

prescriptions for Federal Healthcare Program beneficiaries or discussed their actual or potential refusal, or their authority, intent, or request to refuse to fill such prescriptions.

10.    All Documents and Communications, including Text Message Conversations, relating to the following: (a) the medical necessity or legality of Opioids or other Controlled Substance prescriptions filled or submitted for filling at any of the Exhibit 1 Pharmacies by Federal Healthcare Program beneficiaries; (b) the conduct of any prescriber of Opioids or other Controlled Substances filled for Federal Healthcare Program beneficiaries at any of the Exhibit 1 Pharmacies; (c) the possible or suspected abuse or diversion of any Opioids or other Controlled Substances from or filled at any of Exhibit 1 Pharmacies relating to prescriptions for Federal Healthcare Program beneficiaries; and (d) the Exhibit 1 Pharmacies' filling of prescriptions for Opioids or other Controlled Substances for Federal Healthcare Program beneficiaries written by prescribers for whom You knew or believed that other non-Kroger pharmacies had refused or were going to refuse to fill written prescriptions.

11.    All Documents related to Kroger's use of Prescription Drug Monitoring Programs ("PDMPs"). This includes policies and produces governing the use of PDMPs at the Exhibit 1 Pharmacies as well as the use of PDMPs at the corporate/management level.

12.    All Documents relating to salary and performance evaluation metrics for pharmacists, pharmacy technicians, and pharmacy managers, including Documents relating to their compensation and bonuses.

13.    All Documents and Communications, including training materials, policies, procedures, corporate guidance, and directives, relating to staffing of Your pharmacies, including (a) staffing requirements for pharmacists, pharmacy technicians, and pharmacy managers; (b) pharmacy schedules; and (c) sufficiency of staffing levels.

14.    Documents and Communications relating to instructions or pressure to fill Controlled Substances.

15.    All Documents and Communications relating to Your orders of Opioids of other Controlled Substances between and among You and any distributor or wholesaler.

16.    All Documents and Communications, including training materials, policies, procedures, corporate guidance and directives, discussing or mentioning the False Claims Act.

17.    All Documents and Communications describing the process by which Kroger seeks reimbursement from Federal Healthcare Programs for prescriptions drug claims, including the entry of insurance information and submission of claims.

18.    All Documents You used to answer the Interrogatories.

**ATTACHMENT C**

**INTERROGATORIES**

1.      Identify the full address, DEA registration number(s), and opening and closing dates (if relevant) for each Exhibit 1 Pharmacy.

2.      Identify each pharmacist, pharmacy technician, or pharmacy manager who worked in the Exhibit 1 Pharmacies, including his or her name, title, dates of employment by You, location worked, date of birth, employee identification number, and most recent known work and home contact information (including telephone number, street address, and email address).

3.      Identify each employee with responsibilities relating to (1) compliance with federal and state laws relating to the dispensing of Opioids or other Controlled Substances; (2) pharmacy operations; and (3) the claims submission and reimbursement process for Federal Healthcare Programs, including his or her name, title, dates of employment by You, location worked, date of birth, employee identification number, and most recent known work and home contact information (including telephone number, street address, and email address).

4.      Describe Your reporting structure between and among Kroger Pharmacies and Kroger corporate and management employees.

5.      Describe the process by which Kroger seeks reimbursement from Federal Healthcare Programs for prescription drug claims.

6.      Identify the following information for each month during the Relevant Time Period for each of the Exhibit 1 Pharmacies: (a) average number of prescriptions filled per day; (b) average number of prescriptions for Controlled Substances filled per day; (c) average number of patients for whom You dispensed Controlled Substances; and (d) average number of prescriptions for Controlled Substances that You rejected or otherwise refused to fill.

7.      Describe all criteria and information used to determine the number of pharmacists, pharmacy technicians, and pharmacy managers allocated to a particular Kroger pharmacy.

8.      Identify the System utilized to log and track prescriptions for Opioids and Controlled Substances during the Relevant Time Frame, including how this information is recorded, what other system(s) Your System is synced with, and the ability to note Red Flags or other concerns within this System.

9.      Describe your dispensing practices and procedures for Opioids and Controlled Substances.

13

10.    Describe any and all process or procedures that Kroger uses or has used during the Relevant Time Period to ensure or seek to ensure that improper, unlawful, or invalid prescriptions for Opioids or other Controlled Substances are not filled at its pharmacies.

11.    Describe the efforts Kroger made to block prescribers who wrote medically unnecessary, unlawful, improper, or invalid prescriptions for Controlled Substances and Opioids to be filled at Kroger.

12.    Describe Your policies and procedures relating to document retention and preservation, including retention of electronic communications.

**EXHIBIT 1**

1.      Kroger Pharmacy (1024 S Smithville Road Dayton, OH, 45403)

2.      Kroger Pharmacy (1441 Parsons Ave. Columbus, OH, 43207)

3.      Kroger Pharmacy (2161 Eakin Road Columbus, OH, 43223)

4.      Kroger Pharmacy (264 S. Hollywood Boulevard Steubenville, OH, 43952)

5.      Kroger Pharmacy (2921 W Alex Bell Rd Dayton, OH 45459)

6.      Kroger Pharmacy (300 S Hamilton Rd Gahanna, OH 43230)

7.      Kroger Pharmacy (3420 Towne Blvd Franklin, OH 45005)

8.      Kroger Pharmacy (4485 Refugee Rd Columbus, OH 43232)

9.      Kroger Pharmacy (475 Fortman Dr Saint Marys, OH 45885)

10.     Kroger Pharmacy (1425 Worthington Centre Dr Worthington, OH 43085)

11.     Kroger Pharmacy (6165 Glenway Ave Cincinnati, OH 45211)

12.     Kroger Pharmacy (6417 Columbus Pike Lewis Center, OH 43035)

13.     Kroger Pharmacy (7580 Beechmont Ave Cincinnati, OH 45255)

14.     Kroger Pharmacy (60 Worthington Mall Worthington, OH 43085)

15.     Kroger Pharmacy (850 S Hamilton Rd Whitehall, OH 43213)

16.     Kroger Pharmacy (10635 MacCorkle Ave. SE, Marmet, WV 25315)

17.     Kroger Pharmacy (5 River Walk Mall South Charleston, WV 25303)

18.     Kroger Pharmacy (500 Delaware Ave Charleston, WV 25302)

19.     Kroger Pharmacy (10375 Tara Blvd Jonesboro, GA 30236)

20.     Kroger Pharmacy (108 N State Road 267 Avon, IN 46123)

21.     Kroger Pharmacy (1660 Crawfordsville Square Dr Crawfordsville, IN 47933)

22.     Kroger Pharmacy (2650 Wabash Ave Terre Haute, IN 47803)

15

23.    Kroger Pharmacy (2821 S Washington St Kokomo, IN 46902)

24.    Kroger Pharmacy (5173 W Washington St Indianapolis, IN 46241)

25.    Kroger Pharmacy (12222 Jones Rd Houston, TX 77070)

26.    Kroger Pharmacy (12555 Briar Forest Dr Houston, TX 77077)

27.    Kroger Pharmacy (1820 N Loy Lake Rd Sherman, TX 75090)

28.    Kroger Pharmacy (1670 Starlite Dr Owensboro, KY 42301)

29.    Kroger Pharmacy (2630 Frederica St Owensboro, KY 42301)

30.    Kroger Pharmacy (2710 W Broadway Louisville-Jefferson County, KY 40211)

31.    Kroger Pharmacy (4303 Winston Ave Covington, KY 41015)

32.    Kroger Pharmacy (2946 S Church St Murfreesboro, TN 37127)

33.    Kroger Pharmacy (41 Stonebrook Place Jackson, TN 38305)

34.    Kroger Pharmacy (411 Whitman Road Franklin, TN 37064)

35.    Kroger Pharmacy (4404 Brambleton Ave Roanoke, VA 24018)

36.    Kroger Pharmacy (3971 Brambleton Ave Roanoke, VA 24018)

37.    Harris Teeter Pharmacy (205 E. Little Creek Road in Norfolk, VA 23505)

38.    Kroger Pharmacy (614 Brandon Ave Sw Roanoke, VA 24015)

39.    Smiths (601 S Highway 160 Pahrump, NV 89048)

40.    Kroger Pharmacy (104 Highway 72 W Corinth, MS 38834)

**EXHIBIT 2**

| Prescriber Name | NPI or State of Practice |
|---|---|
| Seraglio Kari, M.D. | **West Virginia** |
| William Earley, D.O. | 1770595043 |
| Dr. Iraj Derakhshan, M.D. | 1124088380 |
| Dr. Muhammed Samer Nasher-Alneam, M.D. | 1467431320 |
| Dr. Jeffrey Addison, M.D. | 1972548618 |
| Dr. Mohamad Sam Kalou, M.D. | 1619065190 |
| Jose Jorge Abbud Gordinho, M.D. | 1124089016 |
| Narendra Negareddy, M.D. | **Georgia** |
| Don Wagoner, M.D. | 1285614511 |
| Tristan Stonger, M.D. | 1134213796 |
| Dr. Ley, M.D. | 1194937193 |
| Dr. Agapios, M.D. | 1447269386 |
| Dr. Bangura, M.D. | 1720094584 |
| Dr. Vierk, M.D. | 1073511556 |
| William Terpstra, M.D. | 1174500474 |
| Peter Steiner, M.D. | 1780643726 |
| Christopher Nelson, M.D. | 1164442240 |
| Robert Gene Rand, M.D. | 1063436517 |
| Dr. Steven Holper, M.D. | 1477504157 |
| Michael Reiner, M.D, | 1285698381 |
| Jim Wang, D.O. | 1962614388 |
| Abubakar Durrani, M.D. (sp) | 1588697700 |
| Nilesh B. Jobalia, M.D. | 1902884455 |
| Sheila A. Barnes, M.D. | 1538225628 |
| Dr. Quirico Cristales, M.D. | 1720021413 |
| John Ratliff, D.O. | 1164465837 |
| Shuresh Gupta, M.D. | 1346272929 |
| Charles Alston, M.D. | 1699734426 |
| Britney Petway, N.P. | 1962795906 |
| Jeffrey Young, N.P. | 1205879764 |
| Sandra Kincaid, M.D. | **Tennessee** |
| Dr. Lawrence Valdez, M.D. | 1447207618 |
| Samson Orusa, M.D. | 1346388568 |
| Bowdoin G. Smith, D.O. | 1346345154 |
| Timothy Abbott, M.D. | 1912929787 |
| Brian Richey, M.D. | 1427385004 |
| Jonathan White, M.D. | 1922169572 |
| Harrison Yang, M.D. | 1770505612 |
| Heather Marks, M.D. | 1003165838 |
| Howard Gregg Diamond, M.D. | 1396772737 |
| Dr. Randall Wade, M.D. | 1881782373 |
| Dr. D.C. Amarasinghe, M.D. | **Virginia** |

## ATTACHMENT D

**Specifications for Production of Electronically Stored Information ("ESI")
and Digitized ("Scanned") Images ("Production Specifications")**

### Collection of ESI

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Consideration should also be given as to whether production media should be encrypted when producing to the government when required by law (i.e. Health Insurance Portability and Accountability Act (HIPAA), Family Educational Rights and Privacy Act (FERPA), etc. *See* Section 22 below.

**1. Specification Modifications**

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

**2. Production Format of ESI and Imaged Hard Copy Documents**

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 19, shall be rendered to TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

    a. **Image File Format:** All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.

    b. When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in *color,* paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

        i. All TIFF file names shall include the unique Bates number burned into the image. (See section 20, below, regarding Bates number instructions.)

18

      ii.   All TIFF image files shall be stored with the ".tif" extension.

    iii.   Images shall be OCR'd using standard COTS products.

          1.  An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

               a.  All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

               b.  No image folder shall contain more than 2,000 images.

c. **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

```
REL000000001,,.\IMAGES\001\REL000000001.TIF,Y,,,
REL000000002,,.\IMAGES\001\REL000000002.TIF,,,,
REL000000003,,.\IMAGES\001\REL000000003.TIF,,,,
REL000000004,,.\IMAGES\001\REL000000004.TIF,Y,,,
REL000000005,,.\IMAGES\001\REL000000005.TIF,,,,
```

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.
- Field Two – (blank) – the volume identifier. This field is not required.
- Field Three – (.\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.
- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.
- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.
- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.
- Field Seven – (blank) – The page count. This field is not required.

d. **Concordance® Load File:** Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database

environment.  The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8.  The file should contain the required fields listed below in section 3.

1. Text delimited load files are defined using the standard Concordance delimiters.  For example:

| | |
|---|---|
| *Field Separator* | *¶ or Code 020* |
| *Text Qualifier* | *þ or Code 254* |
| *Newline* | *® or Code 174* |
| *Multi-value* | *º or Code 167* |
| *Nested values* | *\ or Code 092* |

2. This load file should contain the relative file path to the individual multi-page, document level text files.
3. This load file should also contain the relative file path to all provided native files, such as Microsoft Excel or PowerPoint files.
4. There should be one line for every record in a collection.
5. The load file must contain a header listing the metadata/database fields contained within.  For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

   þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

e. **The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

f. **Directory and folder structure:**  The directory structure for productions should be:

   \*CaseName*\**LoadFiles**
   \*CaseName*\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
   \*CaseName*\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
   \*CaseName*\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

## 3.    Required Metadata/Database Fields

A "   " denotes that the indicated field should be present in the load file produced.  "Other ESI" includes data discussed in sections 5 – 19 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9).  Email, email repositories, and "stand alone" materials (section 12) should

comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column. The parties will meet and confer about any field which cannot be populated automatically (i.e. would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text | Unlimited | | ✓ | ✓ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text | Unlimited | | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e.:  e-mail address, Last name, First name) | Text | 160 | | ✓ | ✓ |
| TO | Recipient (i.e.:  e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e.:  e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent.  Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:SS | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to Government. | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header.  Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content associated with it | Text | Yes/No | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | Unlimited | | ✓ | ✓ |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |

### 4. Search, De-Duplication, Near-Duplicate Identification, Technology Assisted Review, E-mail Conversation Threading and Other Culling Procedures

a. De-duplication of exact hash copies shall be performed globally – across all custodians.  The custodian of each record shall be populated in the DupeCustodian field.

b. All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Government. All available metadata from files withheld from delivery due to the deNISTing process will be available upon request.

c. All files should be globally de-duplicated with the following conditions:

   i. The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

   ii. The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

   iii. All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

   iv. No customization of hashing may occur without prior express approval by the Government.

   v. De-duplication must be done by document family, not by individual document.

   vi. A detailed description of the steps taken to de-duplicate (including the process of obtaining hash values) must be provided to the Government.  For every production after the first, a separate Unified Custodian overlay shall be provided.  If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be expressly stated in the cover letter accompanying the subsequent production(s).

d. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government.  All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields.  The recipient will not employ analytic software or technology to search, identify, or review potentially responsive material, including but not limited to, technology assisted review or predictive coding, without first discussing with the government.

### 5. Hidden Text

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.  For files that cannot be expanded the native files shall be produced with the image file.

### 6. Embedded Files

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

### 7. Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

### 8. Encrypted Files

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

   a. The unencrypted text shall be extracted and provided per section 2.d. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-19.
   b. If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 25) and shall include all available metadata associated with the data, including custodian information.

### 9. Production of Imaged Hard Copy Records

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

   a. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
   b. The first document in the collection represents the parent document and all other documents will represent the children.
   c. All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
   d. All objective coding (e.g., document date or document author) should be discussed and could be produced to the government as additional metadata/database fields should they be deemed as necessary.

27

**10.    Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number.  *See* section 20 below.  The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

**11.    Production of E-mail Repositories**

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF), can contain a variety of items, including: messages, calendars, contacts, tasks, etc.  E-mail database systems should not be produced without consultation with and written consent of the government about the format for the production of such databases.

**12.    Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items**

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

**13.    Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, Text Messages, etc.**

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies.  However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

The expectation of the government is that all familial relationships for all data will be maintained. Similiarly to email conversations and families, the expectation is that all messages/texts in a conversation will be provided the same conversation index and groupid data (maintaining the familial relationship) allowing the government to read the entire conversation in context.  Messages should be produced to align with the formats listed in section 2 and as individual Unicode text files, and attachments should be produced as native files with images and OCR text.

**14.    Production of Social Media**

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.), the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and

provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

### 15.    Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the producing party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. Upon consultation with and written consent of the government, the standard format of all reports provided should be in comma separated values (.csv) format. The information that will be contained in the reports must be thoroughly explained to the government before production.

### 16.    Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

### 17.    Production of Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

18.     **Production of ESI from Non-PC or Non-Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

19.     **Production of Native Files (When Applicable Pursuant to These Specifications)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

   a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
   b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
   c. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

20.     **Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially  (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|          | *Document #1*          | *Document #2*          |
|----------|------------------------|------------------------|
| *Page #1* | PREFIX00000000001      | PREFIX00000000002      |
| *Page #2* | PREFIX00000000001.002  | PREFIX00000000002.002  |
| *Page #3* | PREFIX00000000001.003  | PREFIX00000000002.003  |

## 21.    Media Formats for Storage and Delivery of Production Data

Electronic documents and data shall be delivered on any of the following media:

    a.  CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

    b.  External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives.

    c.  Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

    d.  Media should be labeled with the case name, production date, Bates range, and producing party.

## 22.    Virus Protection and Security for Delivery of Production Data

Production data shall be free of computer viruses.  Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government.  Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions.  All encryption software shall be used with approval by and with the written consent of the government.

## 23.    Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

## 24.    Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing:  total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats.  The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

## 25.    Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall

provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

**26.     Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced. Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.